# 26-1173-cv

## United States Court of Appeals

*for the*

## Second Circuit

EMORY DAVIS, on behalf of himself and others similarly situated,

*Plaintiff-Appellant,*

– v. –

HEALTHPLEX, INC.,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK (SYRACUSE)

**BRIEF FOR PLAINTIFF-APPELLANT**

JAMES L. DAVIDSON
GREENWALD DAVIDSON RADBIL PLLC
*Attorneys for Plaintiff-Appellant*
5550 Glades Road, Suite 500
Boca Raton, Florida 33431
(561) 826-5477

COUNSEL PRESS
A Proceed Service
The Appellate Experts®
(800) 4-APPEAL • (393912)

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ... ii

JURISDICTIONAL STATEMENT ... 1

INTRODUCTION ... 2

STATUTORY AND REGULATORY AUTHORITIES ... 4

ISSUES PRESENTED ... 4

STATEMENT OF THE CASE ... 6

SUMMARY OF THE ARGUMENT ... 7

STANDARD OF REVIEW ... 10

ARGUMENT ... 11

I. The District Court erred in holding that the TCPA's emergency purposes exception applies to routine coverage determination calls ... 11

A. The District Court failed to independently determine the meaning of "emergency purposes" in the TCPA. ... 11

B. The plain text of the TCPA, as confirmed by Congress's findings, requires an emergent situation—not merely a call about health-related subject matter ... 13

C. The FCC's own application of its regulatory definition requires an exigent, time-sensitive risk—not merely health-related subject matter ... 18

D. The consequences of the District Court's interpretation illustrate its error ... 24

E. The non-binding District Court decisions relied on below do not support affirmance ... 26

II. The District Court erred in concluding that the face of Mr. Davis's complaint contained sufficient facts to sustain Healthplex's "emergency purposes" affirmative defense ... 29

CONCLUSION ... 34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*ACA Int'l v. FCC*,
885 F.3d 687 (D.C. Cir. 2018) .......... 21, 22, 25

*Aguirre v. Optum Health Plan of Cal.*,
No. EDCV 25-1161 JGB (SPx), 2025 WL 3190830
(C.D. Cal. Oct. 24, 2025) .......... 26, 27, 28

*Barr v. Am. Ass'n of Political Consultants, Inc.*,
591 U.S. 610 (2020) .......... 13, 24

*BedRoc Ltd., LLC v. U.S.*,
541 U.S. 176 (2004) .......... 14

*Bostock v. Clayton County*,
590 U.S. 644 (2020) .......... 15

*Breda v. Cellco P'ship*,
934 F.3d 1 (1st Cir. 2019) .......... 33

*Capitol Recs., LLC v. Vimeo, LLC*,
826 F.3d 78 (2d Cir. 2016) .......... 17

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) .......... 10, 31

*Corley v. United States*,
556 U.S. 303 (2009) .......... 17

*Dennis v. Amerigroup Wash,, Inc.*,
No. 3:19-cv-05165-RBL, 2020 WL 618472
(W.D. Wash. Feb. 10, 2020) .......... 28

*Facebook, Inc. v. Duguid*,
592 U.S. 395 (2021) .......... 26

*Gabertan v. Walmart, Inc.*,
No. C20-5520BHS, 2021 WL 843148 (W.D. Wash. Mar. 5, 2021) .......... 29

*In re Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*,
651 F.3d 329 (2d Cir. 2011) .......... 10-11

*In re Nine W. LBO Sec. Litig.*,
87 F.4th 130 (2d Cir. 2023) ....................................................10, 29, 31

*King v. Burwell*,
576 U.S. 473 (2015)....................................................................................13

*King v. Time Warner Cable Inc.*,
894 F.3d 473 (2d Cir. 2018) .....................................................................13

*L.A. Lakers, Inc. v. Fed. Ins. Co.*,
869 F.3d 795 (9th Cir. 2017) .....................................................................24

*Lamie v. U.S. Tr.*,
540 U.S. 526, (2004)............................................................................ 11-12

*Latner v. Mount Sinai Health Sys., Inc.*,
No. 16 CIV. 683 (AKH), 2016 WL 10571897
(S.D.N.Y. Dec. 14, 2016) ..........................................................................29

*Lawrence + Mem'l Hosp. v. Burwell*,
812 F.3d 257 (2d Cir. 2016) .......................................................................12

*Lindenbaum v. CVS Health Corp.*,
No. 1:17-CV-1863, 2018 WL 501307 (N.D. Ohio Jan. 22, 2018)....................28

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024)...........................................................................3, 8, 11

*McDonnell v. United States*,
579 U.S. 550 (2016)....................................................................................17

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
606 U.S. 146 (2025)..............................................................................*passim*

*Michael Grecco Prods., Inc. v. RADesign, Inc.*,
112 F.4th 144 (2d Cir. 2024) .....................................................................30

*Mims v. Arrow Fin. Servs., LLC*,
565 U.S. 368 (2012)...............................................................................1, 24

*New York State Dept. of Social Servs. v. Dublino*,
413 U.S. 405 (1973)....................................................................................25

*Red Tree Invs., LLC v. Petróleos de Venezuela, S.A.*,
82 F.4th 161 (2d Cir. 2023) .......................................................................30

*Rinieri v. News Syndicate Co.*,
385 F.2d 818 (2d Cir. 1967) .......... 1

*Roberts v. Medco Health Sols., Inc.*,
No. 4:15-CV-1368-CDP, 2016 WL 3997071
(E.D. Mo. July 26, 2016) .......... 28, 29

*Saks v. Franklin Covey Co.*,
316 F.3d 337 (2d Cir. 2003) .......... 14

*Sandifer v. U.S. Steel Corp.*,
571 U.S. 220 (2014) .......... 15

*Sewell v. Bernardin*,
795 F.3d 337 (2d Cir. 2015) .......... 30

*Skidmore v. Swift & Co.*,
323 U.S. 134 (1944) .......... 18

*Slayton v. Am. Express Co.*,
460 F.3d 215 (2d Cir. 2006) .......... 1

*Smith v. Rite Aid Corp.*,
No. 17-CV-6044 CJS, 2018 WL 5828693 (W.D.N.Y. Nov. 7, 2018) .......... 21

*Soliman v. Subway Franchisee Advert. Fund Tr., LTD.*,
101 F.4th 176 (2d Cir. 2024) .......... 14

*United States v. New York, N.H. & H.R. Co.*,
355 U.S. 253 (1957) .......... 32

*United States v. Wallace & Tiernan Co.*,
336 U.S. 793 (1949) .......... 1

*Util. Air Regul. Grp. v. EPA*,
573 U.S. 302 (2014) .......... 12

**Statutes & Other Authorities:**

28 U.S.C. § 1291 .......... 1

28 U.S.C. § 1331 .......... 1

47 C.F.R. § 64.1200(f)(4) .......... 7

47 U.S.C. § 227 .......... 1

47 U.S.C. § 227(b)(1)(A) .......... 2, 13

47 U.S.C. § 227(b)(1)(A)(iii) ......33

47 U.S.C. § 227(b)(2)(B) ......24

47 U.S.C. § 227(b)(2)(C) ......24

Anthem, Inc. Petition for Declaratory Ruling and Exemption, CG Docket No. 02-278, Declaratory Ruling and Order, 35 FCC Rcd. 6521 (CGB 2020) ......9, 20, 27

Black's Law Dictionary 522 (6th ed. 1990) ......15

Blackboard, Inc. Petition for Expedited Declaratory Ruling, CG Docket No. 02-278, Declaratory Ruling, 31 FCC Rcd. 9054 (2016) ......20

Federal Rule of Civil Procedure 12(b)(6) ......7, 10, 29, 31

Federal Rule of Appellate Procedure 4(a)(1)(A) ......2

In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991, 27 FCC Rcd. 1830 (2012) ......19

In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991, 30 FCC Rcd. 7961 (2015) ......21

In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, CG, Docket No. 02-278, Declaratory Order, 35 FCC Rcd 2840 (2020) ......18, 22, 28

Merriam-Webster's Collegiate Dictionary (11th ed. 2003) ......15

Pub. L. No. 102-243, § 2 ......14, 25

Pub. L. No. 102-243, § 2(12) ......8, 14

Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CC Docket No. 92-90, Report and Order, 7 FCC Rcd 8752 (1992) ......19, 28

## JURISDICTIONAL STATEMENT

The District Court had subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 387 (2012) (federal courts have federal question jurisdiction over TCPA claims).[1]

This Court has jurisdiction under 28 U.S.C. § 1291. On April 14, 2026, the District Court entered an Order granting Defendant-Appellee Healthplex, Inc.'s motion to dismiss and entered judgment on the same day. A-69 to A-81. A judgment dismissing the case "ended th[e] suit so far as the District Court was concerned" and is final notwithstanding its "without prejudice" designation. *United States v. Wallace & Tiernan Co.*, 336 U.S. 793, 794 n.1 (1949); *see Rinieri v. News Syndicate Co.*, 385 F.2d 818, 821 (2d Cir. 1967). In any event, Mr. Davis elected to stand on his complaint, which renders an otherwise non-final dismissal final. *See Slayton v. Am. Express Co.*, 460 F.3d 215, 224 (2d Cir. 2006) (a dismissal with leave to amend becomes final and appealable when the appellant "disclaim[s] any intent to amend"). Mr. Davis did not invite the judgment: Healthplex moved to dismiss and the District

---

[1] Internal quotations and citations are omitted unless otherwise noted.

Court granted the motion over Mr. Davis's opposition. His notice of appeal evidences his intent to stand on the complaint.

Mr. Davis timely filed his notice of appeal on April 28, 2026, within 30 days of the entry of the Order, as required by Federal Rule of Appellate Procedure 4(a)(1)(A). A-82.

## INTRODUCTION

The TCPA bans prerecorded calls to cellular telephones unless the recipient has consented or the call is made "for emergency purposes." 47 U.S.C. § 227(b)(1)(A). This appeal concerns what "emergency purposes" means—and whether a series of routine, prerecorded calls made to the wrong person advising that an insurer had approved or denied unspecified dental services for someone else qualifies as calls made "for emergency purposes."

The District Court held that the calls did. It reasoned that because the calls were "related to health and safety," they fell within the emergency exception. As a result, it dismissed Mr. Davis's complaint. The District Court's holding rests on two errors.

First, the District Court never interpreted the TCPA. Rather than determine what Congress meant by "emergency purposes," it adopted the Federal Communications Commission's ("FCC") regulatory definition—"calls made necessary in any situation affecting the health and safety of consumers." It then expanded on that definition, treating the calls to Mr. Davis as within the exception

because Mr. Davis did not plausibly allege the calls were "unrelated to health or safety."

But *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025), holds that a district court is not bound by an agency's interpretation. Instead, a court must determine a statute's meaning itself under ordinary principles of statutory construction, affording the agency's interpretation only "appropriate respect." *Id*. at 152. And under ordinary principles of statutory construction, the best reading of the statute controls. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024).

Had the District Court interpreted the statute itself, the answer would have been plain. An "emergency" is a sudden, urgent situation demanding immediate action—not a routine coverage determination call. Further, even the FCC's own rulings—which this Court need not reach given the statute's clarity—draw the line at exigency, not subject matter. The FCC has consistently required a genuine, time-sensitive risk to health or safety for a call to qualify for the emergency exception.

Second, even if this Court does not resolve the interpretative question, dismissal was still error. The emergency exception is an affirmative defense. A complaint may be dismissed on an affirmative defense only when the defense appears on the face of the pleading. Nothing on the face of Mr. Davis's complaint establishes that Healthplex's calls were made for emergency purposes.

The District Court reached the contrary conclusion only by inverting the burden—and by keying it to the wrong standard. It faulted Mr. Davis for failing to plead that the calls fell outside of the emergency exception—requiring him to defeat a defense that was Healthplex's to prove. And it demanded that Mr. Davis do so by negating a test the statute does not impose: alleging the calls were unrelated to health or safety.

This Court reviews both questions de novo. It should reverse the District Court's Order. The emergency exception, properly construed, does not reach routine coverage determination calls. In any event, the emergency exception is an affirmative defense that the complaint does not establish on its face. The case should be remanded for further proceedings.

## STATUTORY AND REGULATORY AUTHORITIES

## ISSUES PRESENTED

1. A court must independently determine a statute's meaning and is not bound by an agency's interpretation, including the agency's regulatory definition. The District Court did not construe "emergency purposes"; it recited the FCC's regulatory definition, expanded upon it, and then applied that expanded definition to dismiss the complaint. Did the District Court err in holding that the emergency exception reaches routine coverage determinations calls where the TCPA excludes only calls made "for

emergency purposes," and where the FCC's own application of the exception likewise requires exigency rather than a mere connection to health?

2. The emergency exception is an affirmative defense, on which the defendant bears the burden, and a complaint may be dismissed on that basis only when the defense appears on the face of the pleading. Did the District Court err in dismissing the complaint where the face of the complaint does not establish that the calls were made for emergency purposes, and where the District Court reached the contrary result only by requiring Mr. Davis to plead facts negating the defense?

## STATEMENT OF THE CASE

Mr. Davis is the subscriber to, and sole user of, a cellular telephone number ending in 2384. Compl. ¶ 10 [A-6]. Defendant-Appellee Healthplex, Inc. is a dental-benefits administrator. Compl. ¶ 9 [A-6].

Between November 2023 and January 2024, Healthplex placed a series of prerecorded voice calls to Mr. Davis's cellular telephone. Compl. ¶¶ 11-40 [A-6 to A-10]. Mr. Davis was not a Healthplex customer, had no relationship with Healthplex, and did not consent to the calls. ¶¶41-47 [A-10]. The calls were intended for someone Mr. Davis did not know. Compl. ¶49 [A-11].

Healthplex's prerecorded messages concerned determinations it made on claims for unspecified "dental services":

- On November 22, 2023, Healthplex left two prerecorded messages stating that a request had been denied. Compl. ¶ 15 [A-7];
- On December 12, 2023, Healthplex left two prerecorded messages; the first was cut off, and the second stated that a request had been approved. Compl. ¶¶ 25, 27 [A-8]; and
- On January 26, 2024, Healthplex left a prerecorded message stating that a request had been approved. Compl. ¶ 35 [A-9].

Each message suggested the recipient contact his plan dentist, or call Healthplex during ordinary business hours, "Monday through Friday from 8 a.m. to 6 p.m.," and

closed by wishing the recipient a "good evening." *See*, *e.g.*, Compl. ¶ 15 [A-7]. None of the messages identified any critical, time-sensitive matter, and none required the recipient to take any immediate action.

On December 1, 2025, Mr. Davis filed this action, alleging that Healthplex's prerecorded calls to his cellular telephone violated the TCPA. A-5 to A-16. Healthplex moved to dismiss under Rule 12(b)(6), arguing that the calls fell within the TCPA's exception for calls made for "emergency purposes." A-17 to A-30. The motion did not dispute that Healthplex used a prerecorded voice to call Mr. Davis's cellular number; it contended only that the emergency exception applied to the calls. *See id*.

On April 14, 2026, the District Court granted the motion and dismissed the complaint without prejudice. A-69 to A-79. Citing the FCC's regulatory definition of "emergency purposes"—"calls made necessary in any situation affecting the health and safety of consumers," 47 C.F.R. § 64.1200(f)(4)—the District Court held that Healthplex's calls fell within the exception. A-73. The District Court concluded that "nothing in the [C]omplaint plausibly suggests that the calls were unrelated to health and safety concerns so as to fall outside the exception." A-78. The District Court thereafter entered judgment. A-80 to A-81. Mr. Davis timely appealed. A-82.

## SUMMARY OF THE ARGUMENT

The District Court's dismissal rests on two independent errors, either of which requires reversal.

First, the District Court never interpreted the TCPA. Rather than determine what Congress meant by "emergency purposes," it adopted the FCC's regulatory definition and then read that definition more broadly still. The District Court treated the calls to Mr. Davis as within the emergency exception because he did not plausibly allege they were unrelated to health or safety. But the Supreme Court forbids that approach. A court must independently determine the meaning of a statute, affording the agency's view only the respect its reasoning and consistency earn—and never enough to displace the statute's best reading. *McLaughlin*, 606 U.S. at 152; *see Loper Bright*, 603 U.S. at 400.

Interpreted independently, the exception does not reach Healthplex's calls. "Emergency" carries its ordinary meaning—a sudden, urgent situation demanding immediate action. Congress confirmed that meaning in its own findings, which describe the exception as reaching calls "necessary in an *emergency* situation affecting the health and safety of the consumer." Pub. L. No. 102-243, § 2(12) (emphasis added). A routine call delivering a prerecorded message that an insurer will or will not pay for dental services—returnable during ordinary business hours—is not such a situation.

The statute thus resolves the question and so this Court does not need to go any further. But the result is the same even if the Court looks to the FCC's application of its regulatory definition. Across its rulings, the FCC has drawn the line not by subject

matter but by exigency, requiring a genuine, time-sensitive risk to health or safety for a call to qualify for the exception.

It has refused to treat a health plan's coverage and benefits calls as emergencies. Moreover, even amid a declared pandemic, it required that qualifying calls be tied to an imminent risk. Further, the FCC has been clear that the TCPA "does not authorize a broad exception for health care-related calls." *See* Anthem, Inc. Petition for Declaratory Ruling and Exemption, CG Docket No. 02-278, Declaratory Ruling and Order, 35 FCC Rcd. 6521, 6528, ¶ 8 (CGB 2020) ("Anthem Order").

Second, the Court need not even resolve the meaning of "emergency purposes" to reverse. The emergency exception is an affirmative defense on which Healthplex bears the burden. A complaint may be dismissed on an affirmative defense only when the defense appears on the face of the pleading. Nothing on the face of Mr. Davis's complaint establishes that Healthplex's calls were made for emergency purposes. The messages referred only to unspecified "dental services," with no indication that any call concerned an emergency—or even an urgent or time-sensitive matter.

The District Court reached the contrary conclusion through two related errors. First, it inverted the burden. Because the emergency exception is Healthplex's affirmative defense, dismissal required that the *defense* appear on the face of the complaint. The District Court instead faulted Mr. Davis for failing to allege the opposite: that the dental services that were the subject of the calls were "unrelated to

health or safety." That reversed the parties' roles, requiring Mr. Davis to plead facts defeating a defense Healthplex had not established.

Second, the standard the District Court demanded Mr. Davis negate was not even the governing one. Relation to health is not the test under either the statutory text or the FCC's application of its regulatory definition. The District Court thus required Mr. Davis to plead around an affirmative defense, and to do so by negating a standard that is not the law. A plaintiff bears no such obligation, particularly here where the relevant facts regarding the affirmative defense lie within the defendant's exclusive knowledge. The complaint does not establish that Healthplex's calls to Mr. Davis were made for emergency purposes.

## STANDARD OF REVIEW

This Court reviews *de novo* the grant of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). "A district court may grant a motion to dismiss for failure to state a claim on the basis of an affirmative defense only when facts supporting the defense appear on the face of the complaint." *In re Nine W. LBO Sec. Litig.*, 87 F.4th 130, 142 (2d Cir. 2023) ("*Nine West*").

The District Court's interpretation of the TCPA presents a question of statutory construction that this Court also reviews de novo. *In re Enron Creditors Recovery*

*Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329, 333-34 (2d Cir. 2011) (de novo review for statutory construction). On that question, the Court "must independently determine for itself whether the agency's interpretation of a statute is correct," and is "not bound by the agency's interpretation[.]" *McLaughlin*, 606 U.S. at 155.

## ARGUMENT

### I. The District Court erred in holding that the TCPA's emergency purposes exception applies to routine coverage determination calls.

#### A. The District Court failed to independently determine the meaning of "emergency purposes" in the TCPA.

The District Court's analysis rests on a threshold legal error that infects its entire decision: it did not interpret the emergency exception at all. It instead adopted the FCC's regulatory definition and then expanded it. *See* A-73 to A-78. That is precisely what the Supreme Court has held a court may not do.

The District Court was required to construe the TCPA itself. *See McLaughlin,* 606 U.S. at 155. That obligation flows directly from the role of the judiciary: "the role of the reviewing court . . . is, as always, to independently interpret the statute and effectuate the will of Congress[.]" *Loper Bright*, 603 U.S. at 395.

Affording an agency's interpretation "appropriate respect," *McLaughlin*, 606 U.S. at 152, does not require crediting the interpretation where the statutory text is clear. The best reading of the statute is the correct one; the agency's interpretation does not displace it. *Loper Bright*, 603 U.S. at 400; *see also Lamie v. U.S. Tr.*, 540

U.S. 526, 534 (2004) ("It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.").

Indeed, no degree of respect permits an agency to "rewrite clear statutory terms to suit its own sense of how the statute should operate." *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 328 (2014); *see also Lawrence + Mem'l Hosp. v. Burwell*, 812 F.3d 257, 267 (2d Cir. 2016). Nor can an agency adopt a reading "inconsisten[t] with the design and structure of the statute as a whole[.]" *Util. Air*, 573 U.S. at 321.

Although the District Court recited the statutory text and acknowledged its obligation to interpret the emergency exception "under ordinary principles of statutory interpretation," A-73, it never construed the operative term. Instead, having quoted the statute, it turned immediately to the FCC's regulatory definition—"calls made necessary in any situation affecting the health and safety of consumers"—and then resolved the case under an even broader definition. *See id*. ("[U]nrelated to health or safety.").

Reciting the statutory text is not the same as interpreting it. The distinction *McLaughlin* draws is dispositive here. The District Court's task was to determine what Congress meant by "emergency purposes." By failing to independently assess the statute, the District Court abdicated its duty to interpret the law.

That error was not harmless. Construed under ordinary principles, the TCPA's text—confirmed by the statute's findings—forecloses the District Court's reading. Healthplex's routine, prerecorded coverage determination calls were not made for emergency purposes.

Because this Court is no more bound by the FCC's reading than the District Court was, it should hold that the exception requires a genuine emergency. *See King v. Time Warner Cable Inc.*, 894 F.3d 473, 477–81 (2d Cir. 2018) (construing a TCPA term independently of an invalidated FCC interpretation and, based on text, structure, and purpose, adopting a narrower reading). And since the complaint does not establish on its face that Healthplex's calls satisfy that standard, this Court should reverse and remand for further proceedings.

### B. The plain text of the TCPA, as confirmed by Congress's findings, requires an emergent situation—not merely a call about health-related subject matter.

The TCPA prohibits the use of a prerecorded voice to call a cellular telephone number, with only two exceptions: calls made "for emergency purposes" and calls made with prior express consent. *See* 47 U.S.C. § 227(b)(1)(A). The Supreme Court has described the practical effect of this prohibition: "The Act, among other things, bans almost all robocalls made to cell phones." *Barr v. Am. Ass'n of Political Consultants, Inc.*, 591 U.S. 610, 638 (2020) (Breyer, J., concurring).

In enacting the TCPA, Congress set forth its findings. *See* TCPA, Pub. L. No. 102-243, § 2. Relevant here, Congress declared:

> (12) Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents or when such calls are necessary in an *emergency situation* affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.*, at § 2(12) (emphasis added).

Congress thus used the word "emergency" both in the operative text of the statute and in its own explanation of that text. This confirms that Congress understood the exception to require a genuine emergency, not merely a call that touches on health.

"When interpreting a statutory provision, we begin with the words of the statute." *Soliman v. Subway Franchisee Advert. Fund Tr., LTD.*, 101 F.4th 176, 181 (2d Cir. 2024); *see also Saks v. Franklin Covey Co.*, 316 F.3d 337, 345 (2d Cir. 2003) ("Every exercise in statutory construction must begin with the words of the text."). If the words of a statute are clear, a court is to construe the statute according to the plain meaning of its words. *See BedRoc Ltd., LLC v. U.S.*, 541 U.S. 176, 183 (2004) ("The preeminent canon of statutory interpretation requires [a court] to presume that the legislature says in a statute what it means and means in a statute what it says there. Thus, [a court's] inquiry begins with the statutory text, and ends there as well if the text is unambiguous."). Unless words are otherwise defined, they "will be interpreted as taking their ordinary, contemporary, common meaning"—that is, the meaning they

had when Congress enacted the statute. *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 227 (2014); *see Bostock v. Clayton County*, 590 U.S. 644, 674 (2020) ("… the law's ordinary meaning at the time of enactment usually governs[.]").

The word "emergency" is not technical or specialized. Its ordinary meaning denotes a sudden situation requiring immediate action. Indeed, Black's Law Dictionary defined "emergency" at the time as:

> [a] sudden unexpected happening; an unforeseen occurrence or condition; perplexing contingency or complication or circumstances; a sudden or unexpected occasion for action; exigency; pressing necessity. Emergency is an unforeseen combination of circumstances that calls for immediate action without time for full deliberation.

Black's Law Dictionary 522 (6th ed. 1990).

General-usage dictionaries are in accord. *See*, *e.g.*, Merriam-Webster's Collegiate Dictionary, p. 407 (11th ed. 2003) ("An unforeseen combination of circumstances or the resulting state that calls for immediate action" or "an urgent need for assistance or relief."). Whatever the precise formulation, the definitions share common elements: an urgent situation that requires immediate attention.

Healthplex's messages bore none of these hallmarks. To begin, the messages demanded no immediate action. Instead, the messages advised Mr. Davis to respond at

his convenience,[2] and directed him to contact a plan dentist or to call Healthplex during ordinary business hours, "Monday through Friday from 8 a.m. to 6 p.m." Compl. ¶¶ 15, 27, 35 [A-7 to A-9].

Nor did the calls concern any single, exigent situation. The messages reported a series of different routine benefits determinations over time—a denial in November, an approval in mid-December, and another approval in late January. *Id*.

Moreover, a routine benefits determination is not the kind of sudden, unanticipated event the word "emergency" connotes. It is instead the expected output of an ordinary claims process typically initiated by a plan member. A series of calls that are expected, placed over several months, can wait until business hours to be returned, convey routine denials or approvals of insurance claims, and close by wishing the listener a "good evening," are not made for "emergency purposes."

The District Court invoked the FCC's statement that Congress intended "emergency" to be interpreted "broadly rather than narrowly." A-77. But a directive to read a term broadly is not a license to read it without limit.

---

[2] To reiterate, Healthplex's messages were not even intended for Mr. Davis—they were meant for someone he does not know and thus, by definition, cannot be an emergency *as to him*.

The Supreme Court has refused to adopt "boundless" constructions that leave a statutory term without a limiting principle, even where the broader reading could arguably be squeezed within the words. *See McDonnell v. United States*, 579 U.S. 550, 581 (2016) (rejecting the Government's "boundless interpretation of the federal bribery statute" in favor of "a more limited interpretation" consistent with text and precedent). And this Court has cautioned that a statutory exception must not be read so expansively as to leave nothing of the rule it qualifies. *See Capitol Recs., LLC v. Vimeo, LLC*, 826 F.3d 78, 91 (2d Cir. 2016) ("When a statute sets forth a general principle, coupled with an exception to it, it is logical to assume, in the face of ambiguity in the exception, that the legislature did not intend the exception to be so broad as to leave nothing of the general principle.").

That is the necessary consequence of the District Court's reasoning. Read to reach any call not shown to be "unrelated to health or safety," the exception has no limiting principle. Every call an entity can characterize as health or safety-related would qualify. A construction under which every health or safety-related call qualifies does not read "emergency" broadly—it leaves it with no independent meaning. *See Corley v. United States*, 556 U.S. 303, 314 (2009) (statutes construed to avoid rendering any word "inoperative or superfluous, void or insignificant[.]").

### C. The FCC's own application of its regulatory definition requires an exigent, time-sensitive risk—not merely health-related subject matter.

The plain text of the statute resolves the question before this Court and the Court need not go any further. But even if the Court looks beyond the text—as the District Court did—the FCC's own application of the emergency exception points the same way.

The FCC has consistently applied the emergency exception to require an urgent, time-sensitive threat to health or safety. *See*, *e.g.*, In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Declaratory Order, 35 FCC Rcd 2840, 2842, ¶ 9 (2020) (the "2020 Order") (calls "are not made for an emergency purpose" where they "are not time-sensitive, do not affect the health and safety of consumers, *and* are not directly related to an imminent health or safety risk.") (emphasis added). Healthplex's calls do not meet that standard.

Under *Skidmore v. Swift & Co.*, an agency's interpretation may inform a court's reading of a statute, with weight turning on the thoroughness, validity and consistency of the agency's consideration and reasoning. 323 U.S. 134, 140 (1944). Here, the FCC has applied "emergency purposes" with consistency across nearly three decades of rulings; it has required that a qualifying call address an urgent, time-sensitive threat to health or safety. That consistent body of application confirms the FCC's view of what the exception means—and it forecloses the District Court's reading.

Four bodies of guidance establish that the FCC has drawn the line at exigency, not subject matter.

First, the FCC's examples of qualifying calls share the hallmarks of an urgent, time-sensitive risk to health or safety. In its 1992 Report and Order, the FCC identified utility outage warnings as an example because "interruptions in the supply of water, gas or electricity could in many instances pose significant risks to public health and safety," and prerecorded calls can rapidly warn of the hazard. *See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CC Docket No. 92-90, Report and Order, 7 FCC Rcd 8752, 8778 ¶ 51 (1992) ("1992 Order").

In 2012, the FCC noted that the emergency exception covered emergency alerts under the Warning, Alert, and Response Network Act. In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991, 27 FCC Rcd. 1830, 1837, ¶ 17 (2012) (the "2012 Order"). The FCC likewise described the emergency exception as covering "messages sent to consumers to alert them to emergency situations." *Id*. at 1831-32, ¶ 3.

In 2016, the FCC confirmed that the emergency exception covers calls "made necessary by incidents of imminent danger," such as weather closures, fires, dangerous persons, and toxic spills affecting a school, as well as unexcused absences.

Blackboard, Inc. Petition for Expedited Declaratory Ruling, CG Docket No. 02-278, Declaratory Ruling, 31 FCC Rcd. 9054, 9063 ¶ 21 (2016).[3]

None of these situations bears any resemblance to a series of automated voice messages, delivered over the course of weeks, disclosing that an insurer will or will not pay for unspecified dental services, and requesting a business-hours response.

Second, the FCC has specifically rejected the argument that coverage and benefits calls qualify as emergency calls. When Anthem—a health-benefits company—petitioned the FCC to exempt "case management calls, preventative medicine calls, and calls regarding the use and maintenance of medical benefits," the FCC refused. *See* Anthem Order, 35 FCC Rcd. at 6522, ¶ 4. Applying a standard that reaches health risks when they rise to "imminent danger," the FCC concluded that the calls Anthem described were "not made for an 'emergency purpose.'" *Id.* at 6524, ¶ 10. The FCC thus drew the very line the District Court erased.

Third, in the FCC's 2015 Order the agency again drew its line by exigency, not by subject matter. There, healthcare petitioners sought to exempt a broad set of calls

---

[3] Even the FCC's school unexcused-absence example turned on exigency. The FCC treated such calls as emergencies not because they relate to a child's schooling, but because an unexplained absence may signal "a situation potentially implicating the health and safety of an unaccounted-for child who either did not arrive at school as expected or did not stay at school." *Id.*

for "appointment . . . reminders," "lab results," "prescription notifications," "insurance coverage payment outreach and eligibility," and "account communications and payment notifications." In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991, 30 FCC Rcd. 7961, 8030, ¶ 143 (2015) (the "2015 Order"), *set aside in part on other grounds by ACA Int'l v. FCC*, 885 F.3d 687, 700 (D.C. Cir. 2018). But rather than concluding that all of those calls were already excluded by the emergency exemption, the FCC instead created a limited healthcare exemption to the TCPA for certain "time-sensitive financial and healthcare issues." *See id*. at 8023, ¶ 125. This new exemption was conditioned on strict criteria the emergency exception does not impose. *See id*. at 8031, ¶ 147. Moreover, the FCC distinguished the calls it found exigent—post-discharge follow-up to prevent readmission, and prescription notifications—from others it declined to exempt. *See id*. at 8030-31, ¶¶ 143–47.

Had the FCC understood "any situation affecting the health and safety of consumers" to mean related to health, A-78, the conditioned exemption would have been unnecessary. The calls at issue already would have been exempt as emergencies. *See Smith v. Rite Aid Corp.*, No. 17-CV-6044 CJS, 2018 WL 5828693, at *5 (W.D.N.Y. Nov. 7, 2018) (rejecting a reading that would render the FCC's "inclusion of 'prescription notices' within the . . . exigent healthcare message exception superfluous.").

The D.C. Circuit reached the same conclusion when it reviewed the 2015 Order. It rejected the argument "that all healthcare-related calls satisfy the TCPA's 'emergency purposes' exception," reasoning that it would be "implausible to conclude" that calls concerning "accounting, billing, debt-collection, or other financial content" are made for "emergency purposes," because the "[t]imely delivery of these types of messages is not critical[.]" *ACA Int'l*, 885 F.3d at 714. The court did so because calls within the emergency exception "fall outside the TCPA's consent framework" and may be made "even if recipients are known to object," and routine financial and promotional communications are not the kind of "emergencies" that warrants dispensing with consent. *Id.*

Finally, the FCC's COVID-19 Order bolsters the point. Confronted with a national pandemic—one of the strongest conceivable cases for "any situation affecting the health and safety of consumers"—the FCC did not simply declare all calls related to the pandemic covered by the exception. Although the FCC found that "the current pandemic constitutes such an imminent health risk to the public," 2020 Order, 35 FCC Rcd. at 2841, ¶ 7, the FCC still imposed a limiting test before a pandemic-related call would qualify for the emergency exception. *See id.* ("[T]he content of the call must be solely informational, made necessary because of the COVID-19 outbreak, and directly related to the imminent health or safety risk arising out of the COVID-19 outbreak.").

The FCC exempted informational calls conveying "shelter-in-place requirements, quarantines, medically administered testing information, or school closures," but only because each was "necessitated by the national emergency" and "designed to inhibit the spread of the disease." *Id*. at 2842, ¶ 8. Each call's qualifying feature was not that it conveyed health-related information, but that it was tied to an active, imminent health emergency. Moreover, the FCC excluded certain plainly health-related calls from the exception—including calls "selling or promoting health insurance" and calls to collect debt "aris[ing] from related health care treatment"—because they were "not time-sensitive" *and* "not directly related to an imminent health or safety risk." *Id*. at ¶ 9.

In sum, and in the event this Court finds that the statutory language itself does not resolve the question before it, the FCC's application of the emergency exception does. The FCC has drawn the emergency line by exigency and imminence of a health risk, not by whether a call relates to health. This repeated application directly contradicts the District Court's holding. *See* A-78 ("[N]othing in the complaint plausibly suggests that the calls were unrelated to health and safety concerns so as to fall outside the exception.").

**D. The consequences of the District Court's interpretation illustrate its error.**

The District Court's interpretation of "emergency" is contrary to the purpose the TCPA is intended to serve. The TCPA twice identifies its purpose: both § 227(b)(2)(B) and § 227(b)(2)(C) authorize exemptions only "in the interest of the privacy rights this section is intended to protect." Congress thus named privacy, and only privacy, as the interest the statute exists to protect. *See L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 803-04 (9th Cir. 2017) (concluding, under *expressio unius*, that "the purpose of the TCPA is to protect privacy rights and privacy rights alone").

The Supreme Court has described the same animating concern. Congress passed the TCPA in response to "[v]oluminous consumer complaints about abuses of telephone technology." *Mims*, 565 U.S. at 371; *accord Barr*, 591 U.S. at 613 ("Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints.").

Congress itself did not exempt healthcare content. Yet, under the District Court's sweeping interpretation of the emergency exception, virtually every prerecorded call from any healthcare entity, or even related to some consumer's health, is categorically excluded from the TCPA.

Indeed, a hospital could claim the exception for robocalling former patients with satisfaction and quality-of-care surveys, because gathering outcome data relates to health. A health plan could claim the exception for deluging consumers with automated open-enrollment, eligibility, and coverage-renewal notices, because losing coverage affects health. Insurers and administrators could claim the exception for their explanation-of-benefits and claims-status messages—exactly the calls at issue here—about anyone, consented or not. And nearly any automated message from health apps, patient portals, and pharmacy account systems would qualify.

Affirming the District Court's holding would be to strip TCPA protection from consumers for virtually any health-adjacent call. That reading cannot be correct because it would turn the statute against its own declared purpose of protecting consumer privacy. *See New York State Dept. of Social Servs. v. Dublino*, 413 U.S. 405, 419-20 (1973) ("We cannot interpret federal statutes to negate their own stated purposes."); *see also* Pub. L. No. 102-243, § 2 (Findings).

That is precisely why the breadth of the emergency exception matters. Expanding "emergency purposes" to reach routine healthcare communications strips the consent requirement from an entire category of automated calling. *See ACA Int'l*, 885 F.3d at 714 ("In declining a request to interpret the emergency-purposes exception far more expansively, we are guided by its role in the statutory scheme. Consumers may find themselves wholly unable to stave off calls satisfying the

exception. That is because, by definition, such calls fall outside the TCPA's consent framework; callers can make them even if recipients are known to object."). Under the District Court's reading, any entity whose calls are health-related could place prerecorded calls to cellular numbers without ever obtaining consent or ensuring it is calling the correct telephone number.

The very feature that makes the emergency exception appropriate for genuine crises—that it dispenses with consent—is what makes its overbroad application so damaging to the statute Congress built around consent. Congress did not enact a near-total ban on automated calls to cellular telephones absent prior express consent only to then strip the consent requirement from every automated call an entity could claim was touching on health. *Accord Facebook, Inc. v. Duguid*, 592 U.S. 395, 405 (2021) (rejecting an expansive reading of the term automatic telephone dialing system in the TCPA that would "take a chainsaw to these nuanced problems when Congress meant to use a scalpel.").

**E. The non-binding District Court decisions relied on below do not support affirmance.**

The District Court rested largely on a handful of non-binding district court decisions [A-73 to A-78], chief among them *Aguirre v. Optum Health Plan of Cal.*, No. EDCV 25-1161 JGB (SPx), 2025 WL 3190830 (C.D. Cal. Oct. 24, 2025). None binds this Court, and none withstands scrutiny.

*Aguirre*'s reasoning rests on a misuse of the very definition it invoked. The court relied on the same definition of "emergency" Mr. Davis advanced here, *id*. at *4; *see*, *supra*, Argument I.B. But from that definition, the *Aguirre* court took only two words—"pressing necessity"—and disregarded the rest. *Aguirre*, 2025 WL 3190830, at *4. Using that single phrase, the court declared that it could "concur[] with the FCC's promulgated interpretation," reasoning that the calls "address[ed] a topic of pressing necessity." *Id.*

That misuse compounded a more basic error. *Aguirre* invoked *McLaughlin*'s instruction to afford the agency "appropriate respect," *id.*; *see McLaughlin*, 606 U.S. at 152. But the court then deployed the one phrase in the definition of "emergency" it could stretch to ratify the FCC's regulation's phrasing, instead of testing that phrasing against the statutory term Congress wrote. Having done so, the court reasoned that "receiving information about authorization from a health insurance company emergently relates to an individual's ability to receive medical care," *Aguirre*, 2025 WL 3190830, at *4, and on that basis treated the calls as "time-sensitive and critical." *Id*. at *6.

But the FCC's application of the emergency exception does not support that all calls that relate to a consumer's ability to receive medical care fall outside the statute. *See*, *e.g.*, Anthem Order, 35 FCC Rcd. at 6523, ¶ 10. However the FCC has phrased it—as "imminent danger," *Id.* at ¶ 10; as a call "directly related to the imminent health

or safety risk arising out of the COVID-19 outbreak," 2020 Order, 35 FCC Rcd. at 2841, ¶ 7; or as one addressing "significant risks to public health and safety," 1992 Order, 7 FCC Rcd. at 8778, ¶ 51—the line has always turned on exigency and the presence of a genuine, time-sensitive risk, not on whether a call can be characterized as bearing on health, however significantly. Thus, under either analysis—the statute's text or the FCC's own application of its regulation—*Aguirre* cannot be reconciled with the emergency exception.

The remaining decisions fare no better. *Dennis v. Amerigroup Wash,, Inc.*, No. 3:19-cv-05165-RBL, 2020 WL 618472 (W.D. Wash. Feb. 10, 2020), and *Lindenbaum v. CVS Health Corp.*, No. 1:17-CV-1863, 2018 WL 501307 (N.D. Ohio Jan. 22, 2018), predate *McLaughlin* and illustrate the very approach it forecloses: resting on the FCC's regulatory definition rather than independently construing the statutory term "emergency purposes."

*Roberts v. Medco Health Sols., Inc.*, No. 4:15-CV-1368-CDP, 2016 WL 3997071 (E.D. Mo. July 26, 2016)—which also predates *McLaughlin*—is distinguishable on its facts. The calls there concerned time-sensitive prescription medications "whose absence would have significantly impacted [a family member's]

ongoing health"—not routine coverage determinations for an unknown procedure. *Id.* at *3.[4] Healthplex's calls carry no comparable urgency.

## II. The District Court erred in concluding that the face of Mr. Davis's complaint contained sufficient facts to sustain Healthplex's "emergency purposes" affirmative defense.

As explained above, the emergency purposes exception is properly read to reach only calls necessitated by a genuine emergency. *See*, *supra*, Argument I.B. But the Court need not resolve that question to reverse.

This "emergency purposes" exception is an affirmative defense. *See*, *e.g.*, *Latner v. Mount Sinai Health Sys., Inc.*, No. 16 CIV. 683 (AKH), 2016 WL 10571897, at *2 (S.D.N.Y. Dec. 14, 2016) (TCPA "recognizes 'prior express consent' and 'emergency purposes' as affirmative defenses to liability."). And while a defendant may raise an affirmative defense through a motion to dismiss, "[a] district court may grant a motion to dismiss for failure to state a claim on the basis of an affirmative defense only when facts supporting the defense appear on the face of the complaint." *Nine West*, 87 F.4th at 142. Dismissal under Rule 12(b)(6) is therefore appropriate only if "it is clear from the face of the complaint, and matters of which the court may

---

[4] *Gabertan v. Walmart, Inc.*, No. C20-5520BHS, 2021 WL 843148 (W.D. Wash. Mar. 5, 2021), is also inapposite. There, a pharmacy's text advising a customer how to obtain prescriptions without entering the store was addressed under the FCC's COVID-19 Order and turned on its connection to the declared national pandemic.

take judicial notice, that the plaintiff's claims are barred as a matter of law." *Sewell v. Bernardin*, 795 F.3d 337, 339 (2d Cir. 2015); *see also Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144, 153 (2d Cir. 2024) ("affirmative defenses ... often require consideration of facts outside of the complaint[.]").

The District Court did not apply that standard here, instead committing a fundamental error. It placed on Mr. Davis the burden of offering facts disproving Healthplex's affirmative defense. The District Court reasoned that because Mr. Davis had not specifically alleged that the underlying dental services were "purely elective or unrelated to health," the District Court was not required to speculate about a non-emergency characterization. A-78. But that gets the burden exactly backwards. *See, e.g.*, *Red Tree Invs., LLC v. Petróleos de Venezuela, S.A.*, 82 F.4th 161, 171 (2d Cir. 2023) ("The burden of proof to establish an affirmative defense ... falls on the defendant.").

The question at the motion to dismiss stage is not whether Mr. Davis affirmatively alleged facts establishing that the calls at issue were not made for emergency purposes. Rather, the question is whether the facts appearing on the face of the complaint affirmatively establish that the calls were definitively made for emergency purposes. Healthplex bears the burden of proof on that affirmative defense.

The distinction is not merely semantic. The District Court's error is contrary to the basic structure of civil pleading under the Federal Rules. Rule 8 requires that Mr.

Davis plead a plausible claim. Mr. Davis bears no obligation to plead around a defense that Healthplex has not yet established and for which it alone possesses relevant information. *See Nine West*, 87 F.4th at 144 ("Plaintiffs are under no obligation to plead facts … negating an affirmative defense in the complaint.").

The face of the complaint underscores the point. Healthplex's messages referred only to unspecified "dental services"—a denial in November, approvals in December and January—with no indication that any concerned an urgent risk to health. Compl. ¶¶ 15, 27, 35 [A-7 to A-9]. The District Court's response to this information void was to point out that Mr. Davis had not sufficiently alleged the underlying services were purely elective or cosmetic, and that absent such allegations the District Court would not "speculate in plaintiff's favor" to find a non-emergency characterization. A-21. But this reasoning inverts the applicable standard in two independent respects.

First, at the Rule 12(b)(6) stage, all reasonable inferences are drawn in Mr. Davis's favor, not Healthplex's. *See*, *e.g.*, *Chambers*, 282 F.3d at 152. The complaint's silence about the nature of the dental services does not establish that those services were of an emergent nature, or even medically necessary. Rather, that silence is a product of the very prerecorded messages Healthplex chose to leave on Mr. Davis's cellular telephone, which themselves were ambiguous as to the nature of the dental services. *See* Compl. ¶¶ 15, 27, 35 [A-7 to A-9].

Second, the District Court's approach required Mr. Davis to plead a negative—to specifically allege the dental services were not medically necessary. But Rule 8 does not require a plaintiff to plead the absence of facts that would support a defendant's affirmative defense.

This is because such a requirement would be unworkable. Mr. Davis, as a stranger to Healthplex with no account, no relationship, and no knowledge of whose dental claim generated the calls, had no way to allege the nature of the underlying services. That information is exclusively within Healthplex's possession. Requiring Mr. Davis to negate Healthplex's affirmative defense before discovery would give Healthplex the benefit of facts it has not yet disclosed—and may never need to disclose if dismissal is upheld. *See United States v. New York, N.H. & H.R. Co.*, 355 U.S. 253, 256, n.5 (1957) ("The ordinary rule, based on considerations of fairness, does not place the burden upon a litigant of establishing facts peculiarly within the knowledge of his adversary.").

By placing the burden on Mr. Davis to affirmatively allege that a prerecorded call *that was not even intended for him* was unrelated to health or safety, the District Court's reasoning transformed the TCPA into an opt-in statute for consumers who receive health-related calls. Under the District Court's framework, a consumer who receives an unwanted prerecorded voice call from a hospital, doctor's office, insurer, pharmacy, or dental plan must affirmatively allege facts about the non-health-related

nature of the call—facts that are often exclusively within the caller's possession—to defeat a motion to dismiss. This effectively immunizes health-related robocallers at the pleading stage, before any factual record has been developed. And this is true even though whether the call is unrelated to health is not an element of the consumer's TCPA claim. *See*, *e.g.*, *Breda v. Cellco P'ship*, 934 F.3d 1, 4 (1st Cir. 2019) (elements of a TCPA claim under 227(b)(1)(A)(iii) are: (1) the defendant used an ATDS or artificial or prerecorded voice, (2) to call a telephone number assigned to a cellular service or service for which the called party is charged for the call).

Furthermore, the exigency of Healthplex's calls is itself a fact-bound question that the complaint does not resolve, and that the District Court was not free to resolve against Mr. Davis at the pleading stage. Even accepting the FCC's application, the emergency exception turns on whether a call is time-sensitive and tied to an imminent risk to health or safety, not on whether a call's subject can be labeled "health-related." *See*, *supra*, Argument I.C. And whether a given call meets even that standard depends on facts about the call and the circumstances that prompted it: what the underlying "dental services" were, whether any treatment was imminent, and whether the determination was time-sensitive at all. None of those facts appears on the face of the complaint. Thus, dismissal was improper.

## CONCLUSION

For the foregoing reasons, the Court should reverse the judgment of the District Court and remand for further proceedings.

Dated: July 6, 2026

/s/ *James L. Davidson*

James L. Davidson
Greenwald Davidson Radbil PLLC
Florida Bar No. 723371
5550 Glades Road, Suite 500
Boca Raton, FL 33431
(561) 826-5477
jdavidson@gdrlawfirm.com

Counsel for Plaintiff-Appellant

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 7,408 words. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.