# 26-1173-cv

## United States Court of Appeals
*for the*
## Second Circuit

EMORY DAVIS, on behalf of himself and others similarly situated,

*Plaintiff-Appellant,*

– v. –

HEALTHPLEX, INC.,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK (SYRACUSE)

## REPLY BRIEF FOR PLAINTIFF-APPELLANT

JAMES L. DAVIDSON
GREENWALD DAVIDSON RADBIL PLLC
*Attorneys for Plaintiff-Appellant*
5550 Glades Road, Suite 500
Boca Raton, Florida 33431
(561) 826-5477

COUNSEL PRESS
A Proceed Service
The Appellate Experts®
(800) 4-APPEAL • (395625)

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

ARGUMENT ........ 2

I. "Emergency purposes" requires an emergency ........ 2

A. Healthplex's own canon defeats its reading ........ 2

B. Congress's findings confirm the emergency requirement that the FCC's regulatory definition omits ........ 6

C. The FCC's own applications confirm that health-relatedness is not enough ........ 7

D. Healthplex's legislative history materials do not help it ........ 10

E. The out-of-Circuit cases Healthplex relies on do not warrant affirmance ........ 14

II. The "emergency purposes" exception is an affirmative defense that does not appear on the face of the Complaint ........ 16

CONCLUSION ........ 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*ACA Int'l v. FCC*,
885 F.3d 687 (D.C. Cir. 2018) .......... 3, 7, 8, 12

*Aguirre v. Optum Health Plan of Cal.*,
No. EDCV 25-1161 JGB (SPx), 2025 WL 3190830
(C.D. Cal. Oct. 24, 2025) .......... 4-5, 15

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) .......... 16, 17

*Deal v. United States*,
508 U.S. 129 (1993) .......... 5

*Eisenhauer v. Culinary Inst. of Am.*,
84 F.4th 507 (2d Cir. 2023) .......... 11

*Garcia v. United States*,
469 U.S. 70 (1984) .......... 14

*Gustafson v. Alloyd Co.*,
513 U.S. 561 (1995) .......... 5

*Lawrence + Mem'l Hosp. v. Burwell*,
812 F.3d 257 (2d Cir. 2016) .......... 11

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) .......... 4, 5, 12, 13

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
606 U.S. 146 (2025) .......... 4

*Mims v. Arrow Fin. Servs., LLC*,
565 U.S. 368 (2012) .......... 3

*NLRB v. SW General, Inc.*,
580 U.S. 288 (2017) .......... 14

*Ratzlaf v. United States*,
510 U.S. 135 (1994) .......... 11

*Silver v. City of Albuquerque*,
134 F.4th 1130 (10th Cir. 2025) .......... 15, 16

*United States v. Davis*,
588 U.S. 445 (2019) ....................5

*United States v. Zehrbach*,
47 F.3d 1252 (3d Cir. 1995) ....................11

*Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*,
586 U.S. 9 (2018) ....................2

**Statutes & Other Authorities:**

47 U.S.C. § 227(b)(1)(A) .................... 2, 13

47 U.S.C. § 227(b)(2) ....................13

47 C.F.R. § 64.1200(f)(4) .................... 6, 11

42 C.F.R. § 438.210(a) ....................10

42 C.F.R. § 438.210(b) ....................10

42 C.F.R. § 438.210(c) ....................10

Black's Law Dictionary 522 (6th ed. 1990) ....................5

*In re Rules & Regulations Implementing the TCPA of 1991*,
35 FCC Rcd. 2840 (2020) .................... 8, 12

*In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, Anthem, Inc. Petition for Declaratory Ruling & Exemption*, 35 FCC Rcd. 6521 (2020) ....................7, 9

Pub. L. No. 102-243 § 2(12) .................... 6, 13

S. Rep. 102-178 (1991) .................... 11, 12

## PRELIMINARY STATEMENT

At the center of this appeal is a critical word Congress wrote into the Telephone Consumer Protection Act ("TCPA") and the District Court read out of it: "emergency." The statute excludes prerecorded calls "made for emergency purposes," yet the District Court construed the exception to require no emergency at all.

Healthplex's answering brief cannot salvage that error. Tellingly, Healthplex does not defend the standard the District Court erroneously applied—whether a call is "unrelated to health or safety," A-78—but retreats to a narrower one, arguing that a call qualifies for the "emergency purposes" exception if it is important enough to a consumer's health. Neither is the standard Congress created: a call escapes the TCPA's prohibition only if its purpose is an emergency.

Healthplex fares no better on the pleadings. The emergency exception is an affirmative defense, and Healthplex does not dispute that it supports dismissal only where the defense appears on the face of the Complaint. But nothing in the Complaint establishes that the purpose of any of Healthplex's calls was an emergency. The Complaint alleges only that Healthplex's messages conveyed coverage determinations over time for unspecified "dental services."

To supply the missing emergency, Healthplex recasts the Complaint's allegations as addressing calls that relayed "time-sensitive and critical" "medical

treatment" that was "directly related to an imminent health or safety risk." But those characterizations appear nowhere in the Complaint. The District Court made the same move from the other side—improperly reading the Complaint's lack of detail about the dental services in Healthplex's favor and faulting Mr. Davis for not pleading around a defense that was Healthplex's to prove.

The District Court's judgment should be reversed.

## ARGUMENT

### I. "Emergency purposes" requires an emergency.

#### A. Healthplex's own canon defeats its reading.

Start with the canon Healthplex offers. "Adjectives modify nouns—they pick out a subset of a category that possesses a certain quality." *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 19 (2018); *see* Answer Br. 18. Under that canon, "emergency" modifies "purposes" by picking out a subset—the *emergency* purposes—from the broader universe of purposes for which a call might be placed. Emergency narrows the phrase; it does not enlarge it. A call is excluded only if its *purpose* falls within that subset: addressing an emergency.

That narrowing function matters here because "emergency purposes" defines an *exception* to the TCPA's general rule that prerecorded calls are prohibited. 47 U.S.C. § 227(b)(1)(A). The exception allows for emergency calls to be made with no consent at all—removing the central protection the TCPA affords to consumers.

*See ACA Int'l v. FCC*, 885 F.3d 687, 714 (D.C. Cir. 2018) ("Consumers may find themselves wholly unable to stave off calls satisfying the exception.").

The adjective "emergency" fixes the size of that carve-out. It confines the exception to the narrow set of calls whose purpose is an emergency, leaving the TCPA's broad prohibition on prerecorded calls intact. *Accord Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370–71 (2012) ("Voluminous consumer complaints about abuses of telephone technology—for example, computerized calls dispatched to private homes—prompted Congress to pass the TCPA."). That "[t]he legislative history of the TCPA indicates a congressional intent to interpret the term 'emergency' broadly," Answer Br. at 20, does not mean the word can be stretched past its ordinary meaning.

Yet that is exactly what the District Court did. It treated "emergency purposes" as synonymous with "health-and-safety purposes." *See*, *e.g.*, A-78 ("[N]othing in the complaint plausibly suggests that the calls were unrelated to health and safety concerns so as to fall outside the exception.").[1] So construed, the

---

[1] Despite Mr. Davis quoting directly from the District Court's Order, Healthplex accuses Mr. Davis of "mischaracteriz[ing]" the District Court's conclusion regarding the scope of the emergency exception. *See* Answer Br. 36. According to Healthplex, "[a]t no point did the district court suggest that any and all calls that could be viewed as somehow 'relating to' the intended recipient's health, whether necessary or not, were exempt." Answer Br. 36. But the District Court did exactly that. *See, e.g.*, A-78 ("[P]laintiff must plausibly allege that the calls were unrelated to health or safety."); *id*. (The complaint does not allege that the underlying dental services were purely elective or unrelated to health[.]").

exception reaches every call affecting health or safety—far more than the statutory word "emergency" allows. Indeed, that a call may bear on a patient's ability to obtain unspecified dental services, A-74, does not make it an "emergency."

The surplusage canon Healthplex invokes thus cuts against the District Court's reasoning. *See* Answer Br. 18 (citing the obligation to give effect "to every word Congress used"). To qualify for the exception, a call must be made for a purpose, and that purpose must be an *emergency* one. A reading that excludes every call affecting health or safety replaces the exception's operative word, "emergency," with a criterion Congress never enacted.

Healthplex also argues the Federal Communications Commission's ("FCC") use of the word "necessary" in its regulatory definition captures the "pressing necessity" in Mr. Davis's dictionary definition, so the two readings coincide. *Id*. But the dispute here is not over the regulatory definition's word "necessary"; it is over the statutory phrase "emergency purposes."

Under *Loper Bright*, the District Court was required to determine the "best meaning" of that statutory phrase. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024); *see also McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 152 (2025). That meaning does not come from isolating a single phrase within one dictionary definition, as the district court did in *Aguirre v. Optum Health*

*Plan of Cal.*, No. EDCV 25-1161 JGB (SPx), 2025 WL 3190830 (C.D. Cal. Oct. 24, 2025).

It is a "fundamental principle of statutory construction (and, indeed, of language itself) that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used." *Deal v. United States*, 508 U.S. 129, 132 (1993), *superseded by statute on other grounds as recognized in United States v. Davis*, 588 U.S. 445, 450, n.1 (2019). And "[a] word is also known by the company it keeps." *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995).

Read in context, "pressing necessity" is not a lower standard that Healthplex may invoke to reach any potentially consequential health-related call. It is instead one of several terms the dictionary uses to define "emergency," which it distills into a single idea: "an unforeseen combination of circumstances that calls for immediate action without time for full deliberation." Black's Law Dictionary 522 (6th ed. 1990); *see also* Br. 15. The "best meaning" of "emergency purposes," *Loper Bright*, 603 U.S. at 400, is not found by asking whether a call concerns a "pressing necessity"—a phrase Congress did not enact and which *Healthplex* isolated from the remaining definition—but by reading the definition of "emergency" as a whole and in context, giving effect to the word Congress did use.

### B. Congress's findings confirm the emergency requirement that the FCC's regulatory definition omits.

Healthplex's reliance on the Congressional statement of findings proves Mr. Davis's point, not its own. Healthplex insists the FCC's regulatory definition "tracks nearly-verbatim" the statement of findings, so that the District Court did no more than apply Congress's own understanding. Answer Br. 19. But the one word the FCC's regulatory definition does not track is the word at the center of this appeal.

Consistent with its use of the phrase "emergency purposes" in the statutory text, Congress described the exception as reaching calls "necessary in an *emergency situation* affecting the health and safety of the consumer." Pub. L. No. 102-243, § 2(12) (emphasis added). The FCC's definition, which the District Court relied on, recasts that as calls "made necessary in *any situation* affecting the health and safety of consumers." 47 C.F.R. § 64.1200(f)(4). The FCC thus deleted the very limitation the statute imposes and the findings confirm—that there be an *emergency*.

The FCC's deletion is not a permissible construction of the statute—it is a revision of it. *See* Br. 12. Reading an exception Congress described as requiring an "emergency situation" to require no emergency at all does not give effect to the statutory language or the findings that confirm it.

### C. The FCC's own applications confirm that health-relatedness is not enough.

Healthplex contends it is confusing for Mr. Davis to argue both that the District Court wrongly adopted the FCC's regulatory definition and that the FCC's own applications of the definition refute the District Court's reading. Answer Br. 25. The two are not in tension.

Because the statutory text is clear as to the meaning of "emergency purposes," this Court need go no further. Br. 12-17. But the District Court did look past the text, focusing instead on the FCC's regulatory definition and on opinions of district courts that have applied it. A-73–A-74.[2] Healthplex encouraged that choice in the District Court, A-25–A-28, and defends that choice now. *See*, *e.g.*, Answer Br. at 5. Regardless, the FCC's applications refute the District Court's reading.

First, the FCC has stated that the TCPA "does not authorize a broad exception for health care-related calls." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, Anthem, Inc. Petition for Declaratory Ruling & Exemption*, 35 FCC Rcd. 6521, 6523 (2020) ("Anthem Order"). And when the D.C. Circuit reviewed the FCC's 2015 Order, it similarly rejected outright "the argument . . . that all healthcare-related calls satisfy the TCPA's 'emergency purposes' exception." *ACA Int'l*, 885 F.3d at 714.

[2] As Mr. Davis pointed out in his opening brief, several of these opinions predate *McLaughlin*, "and illustrate the very approach it forecloses[.]" Br. 28.

As Mr. Davis explained in his opening brief, the FCC did so because calls within the emergency exception "fall outside the TCPA's consent framework" and may be made "even if recipients are known to object." Br. 22 (*quoting ACA Int'l*, 885 F.3d at 714); *see also* Br. 26 ("The very feature that makes the emergency exception appropriate for genuine crises—that it dispenses with consent—is what makes its overbroad application so damaging to the statute Congress built around consent."). That reasoning forecloses the test the District Court demanded Mr. Davis meet, requiring him to "plausibly allege that the calls were unrelated to health or safety." A-78.

Second, the FCC's COVID-19 Order undermines the District Court's holding. Even during a national pandemic, the FCC excluded only calls "made necessary because of the COVID-19 outbreak"—tied to the emergency itself. *In re Rules & Regulations Implementing the TCPA of 1991*, 35 FCC Rcd. 2840, 2842, ¶¶ 8–9 (2020) (the "Covid Order"). Meanwhile, it excluded plainly health-related calls, such as calls "selling or promoting health insurance," and calls "made to collect a debt, even if such debt arises from related health care treatment." *Id.*

Despite the clear language in the District Court's Order requiring Mr. Davis to plead that the calls were unrelated to health or safety, *see* A-78, Healthplex attempts to recast the District Court's opinion as solely focusing on the delivery of information that bears on a patient's ability to obtain medical treatment. Answer Br.

at 36. But the FCC has excluded calls from being covered by the emergency exception that bear precisely on a patient's ability to obtain medical treatment. *See* Anthem Order, 35 FCC at 6524 ("case management calls, preventative medicine calls, and calls regarding the use and maintenance of medical benefits"); *see id*. ("We also reject Anthem's request that we exempt certain non-emergency, health care-related calls that it claims are 'urgent' from the requirements of the TCPA. Anthem cites no statutory authority to support its request that we create an 'urgent circumstances' exemption.").

Healthplex's answer to the Anthem Order is to assert that its calls are different; they "clearly are time-sensitive and critical" because they concern "specific medical treatment requested for a specific patient by his or her provider." Answer Br. 29; *see also* Answer Br. 34 ("[T]he telephone calls described in the Complaint … are directly related to an imminent health or safety risk[.]"). But every one of Healthplex's characterizations—that the dental services were "medical treatment," that a provider requested them, that they were time-sensitive *and* critical, that Healthplex's calls were "directly related to an imminent health or safety risk" and even that each of Healthplex's calls to Mr. Davis's telephone number concerned the same dental services—are facts found nowhere in the Complaint. *See infra* II.

As well, Healthplex's reliance on New York's "reasonable effort" policy*, see* Answer Br. 42-43, is misplaced for several reasons. First, the policy governs notice

by Medicaid managed-care organizations to their enrollees. *See* 42 C.F.R. § 438.210(a)–(c). As with several other factual assertions that Healthplex inserts into its brief, nothing in the Complaint establishes that the intended recipient of Healthplex's calls was a Medicaid enrollee. *See* supra I.C.; *see also* infra II.

Second, the policy Healthplex cites does not require prerecorded calls at all. The policy defines "phone contact" to include a call by a live "representative[.]" (cited at Answer Br. 42). Healthplex could thus have satisfied the policy without making a prerecorded call subject to the TCPA.

Third, the policy says nothing about whether a call is "made for emergency purposes" under federal law. A state notice policy cannot convert a non-emergency call into a call made for emergency purposes, nor can it displace the TCPA's requirement of prior express consent.

And that New York may permit a plan to place such calls until an enrollee objects is no answer, because complying with one law does not give a caller the right to violate another. The policy thus does not aid Healthplex: it does not make these calls emergencies, and it cannot supply on the pleadings the details not in Complaint.

**D. Healthplex's legislative history materials do not help it.**

Healthpex contends that this Court can look to the statute's legislative history "to the extent this Court finds that the meaning of 'a call made for emergency purposes' remains ambiguous." Answer Br. 18. But since the best meaning of

"emergency purposes" is clear from the statute, and confirmed by Congress's own findings, *see supra*. I.A-B; *see also* Br. 13-17, resort to legislative history is unnecessary. *See Ratzlaf v. United States*, 510 U.S. 135, 147–48 (1994) ("[W]e do not resort to legislative history to cloud a statutory text that is clear."), *superseded by statute on other grounds as recognized in United States v. Zehrbach*, 47 F.3d 1252, 1261 (3d Cir. 1995); *see also Eisenhauer v. Culinary Inst. of Am.*, 84 F.4th 507, 520 (2d Cir. 2023) (noting that the "plain meaning" of the statutory phrase at issue "trumps any resort to legislative history[.]") (*quoting Lawrence + Mem'l Hosp. v. Burwell*, 812 F.3d 257, 266 (2d Cir. 2016).

Even if this Court affords weight to the legislative history materials Healthplex offers, those materials do not support Healthplex's broad reading, or the District Court's even broader application of the statutory text. For instance, the Senate Report speaks of a "*threat* to the health or safety of the persons in a residence," S. Rep. 102-178, at 10 (emphasis added)—a danger to well-being. That requires more than the FCC's "any situation affecting" health and safety, 47 C.F.R. § 64.1200(f)(4), and far more than the District Court's "unrelated to health" test. *See*, *e.g.*, A-78. Indeed, a call may "affect" health without threatening any harm at all.

Similarly, Healthplex's telephone disconnection example does not aid it. The Senate Report did not conclude that disconnected telephone service is an emergency. It raised disconnection only as something the FCC "should consider," and only

within the paragraph's governing standard—"any threat to the health or safety of the persons in a residence." S. Rep. 102-178, at 10 (1991). And the FCC does not appear to have concluded that service-disconnection calls are "made for emergency purposes" in the thirty-five years since.

Healthplex's reference to "[r]outine bill payment reminders" is equally unavailing given that the FCC appears to have also never found that calls delivering bill payment reminder messages are made for emergency purposes, and has in fact concluded the opposite. *See* Covid Order, 35 FCC Rcd. at 2842, ¶ 9 (debt-collection calls, "even if such debt arises from related health care treatment," "are not made for an 'emergency purpose.'"); *accord In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961 (2015), *set aside in part on other grounds sub nom. ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018) (declining to exempt under healthcare exemption "account communications and payment notifications").

Healthplex also references the Senate Report to claim that Congress "delegate[d] to the FCC the definition of 'emergency[.]'" Answer Br. 21. But under *Loper Bright*, the question is whether the best reading of the *statute* is that Congress delegated discretionary authority to the agency to define the statutory term. 603 U.S. at 394–95. The TCPA does not.

The TCPA excludes calls "made for emergency purposes," 47 U.S.C. § 227(b)(1)(A), and grants the FCC only general authority to "prescribe regulations to implement the requirements of this subsection." *Id.* § 227(b)(2). The best reading of that provision is that it confers authority to implement the prohibition Congress enacted, not to define its terms. An ambiguity "about the scope of an agency's own power" is, after all, "perhaps the occasion on which abdication in favor of the agency is least appropriate." *Loper Bright*, 603 U.S. at 401. Absent a clear statutory delegation, this Court determines the best meaning of "emergency purposes" itself. *Loper Bright*, 603 U.S. at 400.

But even if the TCPA did explicitly confer delegation to the FCC to define "emergency purposes," the result would be the same. The reviewing court's role remains "to independently interpret the statute and effectuate the will of Congress," "fixing the boundaries of the delegated authority" and ensuring the agency stayed within them. *Id.* at 395. Congress fixed those boundaries by using the phrase "emergency purposes," 47 U.S.C. § 227(b)(1)(A), and then by describing the exception as reaching an "emergency situation affecting the health and safety of the consumer." Pub. L. No. 102-243, § 2(12). A definition that requires no emergency at all falls outside of any boundaries the FCC could have even arguably been delegated.

The floor statements Healthplex relies on fare no better. Courts "have eschewed reliance on the passing comments of one Member, and casual statements from the floor debates." *Garcia v. United States*, 469 U.S. 70, 76 (1984) (internal citations omitted); *see also NLRB v. SW General, Inc.*, 580 U.S. 288, 307 (2017) (floor statements "among the least illuminating forms of legislative history"). Healthplex thus builds its argument on precisely the material its own authority discounts. *See* Answer Br. 20 (quoting *Garcia* via *Eisenhauer*).

But even crediting the floor statements, they do not support the FCC's regulatory definition or the District Court's even broader interpretation. The statements addressed one narrow point—whether the FCC could find calls about power outages to fall within the emergency exception. As Healthplex's brief asserts, that language was "inserted . . . to . . . accommodate the concerns many of our rural electric cooperatives have had with respect to . . . normal maintenance on their lines." Answer Br. 23, n.1. That the sponsors said the FCC could find utility outages as emergencies in order to attempt to accommodate a particular industry says nothing about whether "emergency purposes" reaches dental insurance-coverage determinations.

**E. The out-of-Circuit cases Healthplex relies on do not warrant affirmance.**

As Mr. Davis's opening brief explained, the out-of-Circuit decisions the District Court relied on—and which Healthplex now invokes—do not withstand

scrutiny. *See* Br. 27–29. In particular, Healthplex's renewed reliance on *Aguirre* adds nothing. *Aguirre* isolated "pressing necessity" from the definition it invoked, then ratified the FCC's regulatory definition rather than testing it against the statutory term—the move Healthplex repeats here. Br. 27–29; *see* supra Part I.A.

Healthplex also leans heavily on *Silver v. City of Albuquerque*, 134 F.4th 1130 (10th Cir. 2025). But *Silver* undermines Healthplex's position.

There, the Tenth Circuit held that Albuquerque's town-hall calls qualified for the emergency exception precisely because they were "made necessary by the COVID-19 outbreak"—a "*bona fide* emergency," and "directly related to the risks associated with" that emergency. *Id*. at 1134-35; *see also id*. at 1132 ("The federal government, the State of New Mexico, and the City of Albuquerque had all declared a state of public health emergency relating to COVID-19.").

*Silver* thus confirms Mr. Davis's reading, not Healthplex's or the District Court's. The town-hall calls qualified because an emergency—the declared pandemic—existed independently of the calls and made the calls necessary.

Healthplex offers no comparable circumstance. It offers only coverage determinations for unspecified dental services, requested by someone at some unstated time. Answer Br. 2; *see also* id at 11 ("The 'emergency' was the underlying 'purpose' – the healthcare situation and sought-after medical treatment[.]"). Notably,

Healthplex cannot even detail what this "healthcare situation" and "medical treatment" are because it is not in the record. *See infra* II.

## II. The "emergency purposes" exception is an affirmative defense that does not appear on the face of the Complaint.

Healthplex does not dispute that the emergency exception is an affirmative defense, or that it may support dismissal only where it "appears on the face of the complaint." Answer Br. 44. It argues only that the defense did appear on the face of the Complaint here, because the Complaint quoted the messages and, as a result, the District Court could assess whether they "implicate 'health and safety' concerns." Answer Br. 45. That argument fails because it assumes the very point in dispute.

Healthplex contends that once "the complaint's allegations establish an affirmative defense," the burden shifts to the plaintiff to counter it. Answer Br. 46. But that rule applies *only once the defense is established*—a question this appeal presents. The Complaint's silence about the nature of the dental services does not establish that they were an emergency, or that any call was made necessary by one (or even that they implicated health concerns). *See Silver*, 134 F.4th at 1134–35. And at this stage, every reasonable inference runs in Mr. Davis's favor, not Healthplex's. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

Healthplex's own framing illustrates the point. Throughout its brief, it recasts the Complaint's phrase "dental services"—quoted directly from Healthplex's own prerecorded messages—as "medical treatment." *See*, *e.g.*, Answer Br. 1, 8–9, 11.

That characterization appears nowhere in the Complaint. Dental services may be routine or urgent, elective or medically necessary. The Complaint's bare reference to "dental services" establishes none of these, let alone an emergency. That Healthplex must recast its calls about "dental services" as concerning "medical treatment" to attempt to make its defense work only confirms that the defense does not appear on the face of the Complaint.

The District Court's reasoning bolsters the point. First, it read the Complaint's silence about the nature of the dental services in Healthplex's favor—treating the absence of any detail as indicating that the calls implicated "'health and safety' concerns." A-77. But at the pleading stage, that silence had to be read in Mr. Davis's favor. *Chambers*, 282 F.3d at 152. Mr. Davis's inability to describe the dental services in more detail—because the calls were *not about his* dental services, and since this case never reached discovery—does not establish that the calls were health-related, let alone that the calls were each made necessary by an emergency.

Second, having drawn that inference against Mr. Davis, the District Court faulted him for not rebutting it—for not alleging that the services were "elective or cosmetic" or "unrelated to health or safety"—and would not "speculate in [his] favor" absent such allegations. A-78. That is backwards. Healthplex never established that the services involved an emergency, or were even health-related (the District Court's standard). Yet the District Court improperly required Mr. Davis to

establish that they were not, using information only Healthplex holds. To be sure, the calls were not for Mr. Davis—they were intended for a third-party Mr. Davis does not know. It thus would be impossible, before discovery, for Mr. Davis to plead the precise dental services at issue.

Finally, the District Court applied the wrong standard. Whether the calls were "unrelated to health or safety," A-78, is not the question. The affirmative defense requires a call made for "emergency purposes." *See supra* I.

Even accepting that the face of the Complaint established that the calls implicate health concerns—the Complaint does not—nothing in the content of Healthplex's messages establishes that they were made for an emergency purpose. Rather, read in the light most favorable to Mr. Davis, as it must be, the content of Healthplex's messages points away from an emergency, not toward one. *See* Br. 6-7; *see also id*. at 15-16. Because the Complaint does not establish that each call was made for "emergency purposes," dismissal was improper.[3]

---

[3] Tellingly, Healthplex does not address Mr. Davis's remaining points. It does not dispute that the facts bearing on the nature of the services lie exclusively in its possession, *see* Br. 32; that whether a call is health-related is not an element of a TCPA claim, Br. 33; or that Healthplex's reading would require any consumer who receives a health-related robocall to plead around the emergency purposes defense at the pleadings stage without the aid of discovery. Br. 32–33.

## CONCLUSION

For the foregoing reasons, and those in Mr. Davis's opening brief, the judgment of the District Court should be reversed and the case remanded for further proceedings.

Dated: August 21, 2026

Respectfully submitted,

/s/ James L. Davidson
James L. Davidson
GREENWALD DAVIDSON RADBIL PLLC
5550 Glades Road, Suite 500
Boca Raton, FL 33431
(561) 826-5477
jdavidson@gdrlawfirm.com

Counsel for Plaintiff-Appellant

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B), the word limit of Local Rule 32.1(a)(4) (A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f): this document contains 4,285 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font Times New Roman.

Dated: August 21, 2026

/s/ James L. Davidson
James L. Davidson

## CERTIFICATE OF SERVICE

I certify that on August 21, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Second Circuit using the CM/ECF system, which will serve all counsel of record.

/s/ James L. Davidson
James L. Davidson